Kevin F. Ruf (#136901)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: kruf@glancylaw.com

Brian P. Murray (*pro hac vice* forthcoming)
Lee Albert (*pro hac vice* forthcoming)
**GLANCY PRONGAY & MURRAY LLP**
230 Park Avenue, Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Fax: (212) 884-0988
Email: bmurray@glancylaw.com
Email: lalbert@glancylaw.com

[Additional Counsel on Signature Page]

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE E. PULEO, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| APPLE INC., | <u>Jury Trial Demanded</u> |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Bruce E. Puleo ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action lawsuit for damages and equitable relief against Defendant Apple Inc. ("Defendant" or "Apple") and alleges the following based upon personal information as to allegations regarding himself and the investigation of his counsel, and on information and belief as to all other allegations:

## I.    NATURE OF THE ACTION

1.    This is a consumer class action complaint brought against Apple for deceptively and systematically violating wiretapping, privacy, and consumer fraud laws for its own financial gain.

2.    Specifically, Defendant knowingly violated consumers' privacy by unlawfully tracking consumers' usage of Apple apps in order to harvest consumers' personal data from their iPhones and iPads ("Mobile Devices"), despite consumers' explicit indication through Defendant's mobile device settings that they want to keep their app data private.

3.    Apple has sought to position itself as a leader by touting how its Mobile Devices allow users to control the information they share. For example, Apple's "Privacy Policy" states, "[a]t Apple, we respect your ability to know, access, correct, transfer, restrict the processing of, and delete your personal data."[1]

4.    The "User Privacy and Data Use" page on the Apple App Store similarly assures users that "[t]he App Store is designed to be a ***safe and trusted place*** for users to discover apps created by talented developers around the world. Apps on the App Store are ***held to a high standard for privacy, security***, and content because nothing is more important than maintaining users' trust."[2] (emphasis added).

5.    Defendant provides users with explicit instructions explaining how to control what data Apple collects about app usage. For example, if consumers do not want Apple to track their

---

[1] *See* Apple Privacy Policy, updated December 22, 2022, available at https://www.apple.com/legal/privacy/pdfs/apple-privacy-policy-en-ww.pdf.

[2] *See* App Store User Privacy and Data Use, https://developer.apple.com/app-store/user-privacy-and-data-use/ (last viewed March 1, 2023).

information, Defendant directs them to turn off the "Allow Apps to Request to Track" option in their Mobile Device settings. "[App] tracking occurs when information that identifies you or your device collected from an app is linked with information that identifies you or your device collected on apps, websites and other locations owned by third parties for the purposes of targeted advertising or advertising measurement, or when the information collected is shared with data brokers."[3]

6.      In addition, Defendant outright promises in its Mobile Device settings that it will not share consumers' device analytics, if consumers so choose. Apple states that it will "disable [the sharing of] Device Analytics altogether" if a consumer toggles or turns off "Share iPhone Analytics" on an iPhone or selects a similar setting on other Apple Mobile Devices, like the iPad.[4]

7.      Accordingly, Apple Mobile Device users reasonably expect that their activity will not be shared without their affirmative consent.

8.      Until recently, consumers had no idea that Apple was tracking their personal data for profit when they specifically requested their data to be kept private.

9.      Through its unlawful tracking and hoarding of consumer data, Defendant collects and monetizes consumer information without Plaintiff's and similarly situated consumers' consent.

10.      Defendant's practice of collecting data from users who have specifically followed Apple's own instructions to prevent sharing of private data deceives consumers and constitutes an unlawful interception of a communication in violation of, *inter alia,* consumers' privacy and state and federal wiretapping laws.

11.      Plaintiff is an individual whose mobile app usage was tracked by Defendant after he affirmatively elected to turn off the "Allow Apps to Request to Track" and/or "Share [Device] Analytics" options on his Mobile Device.

12.      Plaintiff seeks damages and equitable relief on behalf of himself and all other similarly situated Apple Mobile Device users nationwide, arising from Defendant's knowing and

---

[3] *See* https://support.apple.com/en-us/HT212025 (last viewed March 16, 2023).

[4] If a consumer has an Apple Watch paired to her iPhone, she must instead turn off the setting for "Share iPhone and Watch Analytics" for the same effect. Hereinafter, this setting, across devices, will be referred to as "Share [Device] Analytics."

unauthorized copying, taking, use, and tracking of consumers' communications and activity, and its knowing and unauthorized invasion of consumer privacy.

## II.   JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this action is a class action in which the aggregate amount in controversy for the proposed Class (defined below) exceeds $5 million, exclusive of interests and costs; more than 100 proposed Class Members are involved; and at least one member of the proposed Class is a citizen of a state different from that of Defendant.

14.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District. Upon information and belief, Defendant designed and developed the devices at issue in this litigation at their headquarters in this District and made decisions concerning the issues that are the subject of this limitations from its headquarters.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District, Defendant transacts substantial business in this District, and Plaintiff resides in this District.

16.     This Court has supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367.

## III.   THE PARTIES

17.     Plaintiff Bruce E. Puleo is an adult citizen of New Jersey and is domiciled in Boonton, New Jersey. Plaintiff purchased an iPhone 14 Pro in September 2022. Plaintiff regularly accessed iPhone apps including the App Store, Maps, and Weather. On the same day that Plaintiff purchased his iPhone, he turned off the "Allow Apps to Request to Track" and "Share iPhone Analytics" options, as well as other privacy settings such as the "Personalized Ads" option. Apple has nevertheless accessed his data while these features were turned off.

18.     Defendant Apple Inc. is incorporated in California and maintains its principal place of business at One Apple Park Way, Cupertino, CA 95014.

## IV. FACTUAL ALLEGATIONS

### A. Consumers Have a Reasonable Expectation of Privacy on Their Mobile Devices.

19.     Data obtained from consumers' personal devices provides the foundation for many of the world's largest businesses.[5] As the commercial use of consumers' data has become more valuable to businesses, consumers are becoming more protective about businesses obtaining that data and more concerned about their privacy online.

20.     A 2019 study by Pew Research Center showed that 79% of Americans are concerned about the way their data is being used by companies.[6]

21.     According to a Consumer Privacy Survey conducted by Cisco in 2021, 86% of consumers say they care about data privacy and want more control over their data.[7] Nearly half of those surveyed said they felt unable to protect their personal data—mainly because companies are not transparent about how they use consumer data.[8]

22.     Industry observers have introduced the concept of "surveillance capitalism," referring to "consumers' increasing awareness that their data is bought, sold, and used without their consent—and their growing reluctance to put up with it."[9]

23.     Apple thus knows that users want to keep their data private and are concerned with preventing others from accessing it. Yet, it continues to collect and track detailed information from users who access its apps on their personal devices.

---

[5] Hossein Rahnama and Alex "Sandy" Pentland, *The New Rules of Data Privacy*, HARVARD BUSINESS REVIEW (Feb. 25, 2022), https://hbr.org/2022/02/the-new-rules-of-data-privacy.

[6] Brooke Auxier, Lee Rainie, Monica Anderson, et al., *Americans and Privacy: Concerned, Confused and Feeling Lack of Control Over Their Personal Information*, PEW RESEARCH CENTER (Nov, 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/.

[7] CISCO Consumer Privacy Survey, *Building Consumer Confidence Through Transparency and Control* (2021), https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-cybersecurity-series-2021-cps.pdf.

[8] *Id.*.

[9] Rahnama and Pentland, *supra* n.5, https://hbr.org/2022/02/the-new-rules-of-data-privacy.

**B.    Apple Made Consumers Believe They Were Committed to Maintaining the Privacy of Their Data.**

24.    Apple is the world's largest and most valuable technology company, with net sales of $394.3 billion in 2022,[10] and a market capitalization of $2.6 trillion, as of April 2022.[11]

25.    Apple "designs, manufactures and markets smartphones, personal computers, tablets, wearables and accessories, and sells a variety of related services" for some of the world's most popular mobile devices, such as the iPhone and the iPad.[12]

26.    In the second quarter of 2022, Apple held 48% of the smartphone shipment market,[13] with more than 2.24 billion iPhones sold as of February 2023.[14]

27.    Apple "has long preached privacy as one of its core values."[15]

---

[10] Apple Inc., Form 10-K for the fiscal year ended September 24, 2022, available at https://d18rn0p25nwr6d.cloudfront.net/CIK-0000320193/b4266e40-1de6-4a34-9dfb-8632b8bd57e0.pdf.

[11] Jonathan Ponciano, FORBES GLOBAL 2000 (May 12, 2022), https://www.forbes.com/sites/jonathanponciano/2022/05/12/the-worlds-largest-technology-companies-in-2022-apple-still-dominates-as-brutal-market-selloff-wipes-trillions-in-market-value/?sh=5bf2602d3448.

[12] Apple Inc., Form 10-K for the fiscal year ended September 24, 2022, available at https://d18rn0p25nwr6d.cloudfront.net/CIK-0000320193/b4266e40-1de6-4a34-9dfb-8632b8bd57e0.pdf.

[13] Katie Canales, *More American are using iPhones than Android phones for the first time ever, new report says – a major milestone for Apple*, BUSINESS INSIDER (Sept. 2, 2022), https://www.businessinsider.com/more-americans-using-apple-iphones-than-android-report-2022-9.

[14] Daniel Ruby, *26+ iPhone User & Sales Statistics (Fresh Data 2023)*, DEMAND SAGE (Feb. 3, 2023), https://www.demandsage.com/iphone-user-statistics/#:~:text=Although%20it's%20been%2015%20years,have%20been%20sold%20to%20date.

[15] Jason Aten, *Apple's iOS 15.2 Is a Major Privacy Update That Lets You See How Apps Are Tracking You*, INC., https://www.inc.com/jason-aten/apples-ios-152-is-a-major-privacy-update-that-lets-you-see-how-apps-are-tracking-you-its-very-bad-news-for-facebook.html (last viewed March 1, 2023).

28.     At an *All Things Digital* conference in 2010, Steve Jobs, then-CEO of Apple, announced,

> I believe people are smart and some people want to share more data than other people do. Ask them. Ask them every time. Make them tell you to stop asking them if they get tired of your asking them. Let them know precisely what you're going to do with their data.[16]

29.     In a 2015 interview with National Public Radio, Apple CEO, Tim Cook, said,

> We do think that people want us to help them keep their lives private. We see that privacy is a fundamental human right that people have. We are going to do everything that we can to help maintain that trust. . . . We don't collect a lot of your data and understand every detail about your life. That's just not the business that we are in. . . . If you're in our News app, and you're reading something, we don't think that in the News app that we should know what you did with us on the Music app – not to trade information from app to app to app to app. …[17]

30.     Indeed, Apple consistently attempts to differentiate itself from its competitors by highlighting its commitment to privacy. "Apple has made privacy protection a market differentiator: device manufacturers and app developers now use privacy features to draw new users."[18]

31.     The landing page for the "Privacy" section of Apple's website touts, "Privacy. That's Apple."[19] Scrolling down on the same page, Apple emphasizes, "[p]rivacy is a fundamental human right. It's also one of our core values. Which is why we design our products and services to protect it. That's the kind of innovation we believe in."[20]

---

[16] *Apple and Privacy,* APPLEINSIDER, https://appleinsider.com/inside/apple-and-privacy (last viewed March 2, 2023).

[17] *Apple CEO Tim Cook: 'Privacy Is A Fundamental Human Right,'* NPR transcript (Oct. 1, 2015), https://www.npr.org/sections/alltechconsidered/2015/10/01/445026470/apple-ceo-tim-cook-privacy-is-a-fundamental-human-right.

[18] Rahnama and Pentland, *supra* n.5, https://hbr.org/2022/02/the-new-rules-of-data-privacy

[19] https://www.apple.com/privacy/ (last viewed March 1, 2023).

[20] *Id.*

32.     Apple also promotes that "[p]rivacy and security are at the forefront of Apple's products."[21] Apple's iOS 14.5 operating system update included App Tracking Transparency, which required app developers to ask permission from users before tracking their activity in websites and third-party apps.[22] Apple also required app developers to explain the information that their apps collect and how that information is used.[23] Notably, the opt-in rate for this feature was reported to be around 4% for U.S. users – meaning that when given the choice, ***almost all mobile device users chose not to have their data tracked***.[24]

33.     A "headline feature" of Apple's iOS 15.2 operating system update for the iPhone (released in December 2021) was the "App Privacy Report," a "privacy-focused feature aimed at giving users a better picture of how apps and websites are tracking their activity."[25]

34.     Apple also consistently promotes its purported commitment to users' privacy through its marketing strategies. In 2019, Apple launched the marketing campaign, "Privacy. That's iPhone" and strategically plastered billboards across the country to promote its efforts to protect users' privacy.[26] One billboard, covering the entire side of Marriott's Springhill Suites hotel, was placed outside the Consumer Electronics Show in Las Vegas, NV, which Apple did not even attend.[27] The

---

[21] *Apple and Privacy, supra* n.16, https://appleinsider.com/inside/apple-and-privacy.

[22] Aten, *supra* n.15, https://www.inc.com/jason-aten/apples-ios-152-is-a-major-privacy-update-that-lets-you-see-how-apps-are-tracking-you-its-very-bad-news-for-facebook.html.

[23] *Id.*

[24] Rachel Kraus, *After update, only 4 percent of iOS users in U.S. let apps track them,* Mashable (May 7, 2021), https://mashable.com/article/ios-14-5-users-opt-out-of-ad-tracking.

[25] Aten, *supra* n.15, https://www.inc.com/jason-aten/apples-ios-152-is-a-major-privacy-update-that-lets-you-see-how-apps-are-tracking-you-its-very-bad-news-for-facebook.html.

[26] Mike Wuerthele, *'Privacy. That's iPhone' ad campaign launches, highlights Apple's stance on user protection,* AppleInsider (March 14, 2019), https://appleinsider.com/articles/19/03/14/privacy-thats-iphone-ad-campaign-launches-highlights-apples-stance-on-user-protection.

[27] Chance Miller, *Ahead of CES, Apple touts 'what happens on your iPhone, stays on your iPhone' with privacy billboard in Las Vegas,* 9to5Mac (Jan, 5, 2019), https://9to5mac.com/2019/01/05/apple-privacy-billboard-vegas-ces/ .

CLASS ACTION COMPLAINT

billboard read, "What happens on your iPhone, stays on your iPhone," playing on the infamous slogan, "What happens in Vegas, stays in Vegas." [28] Underneath the slogan, Apple provided a URL to its privacy policy website.[29] Another billboard covering the side of a building in midtown New York stated, "Your iPhone knows a lot about you. But we don't. Privacy. That's iPhone."[30]

35.     In one Apple video advertisement in the same privacy campaign, a consumer stumbles upon a "data auction" as the auctioneer pretends to offer up the various data that apps have collected about her.[31] The auctioneer announces the auction, "a digital treasure trove of Charming Ellie's private data," consisting of various categories of "Ellie's" personal information, such as "her emails," "her location data," "her contacts," and "her browsing history," which are placed on the block and offered to the audience.[32] For example, a map showing "[Ellie's] location data" is shown, and the auctioneer says, "It's not creepy, it's commerce! Do I hear 600? 620?..."[33] Then, "Ellie" takes out her iPhone and selects the "Ask App Not to Track" option, which promptly causes all auction attendees to disappear, as the text on the screen promotes, "It's your data. iPhone helps keep it that way."[34]

36.     In another advertisement for Apple's App Tracking Transparency, the narrator describes various ways in which certain companies use consumer data.[35] The narrator then says,

---

[28] *Id*.

[29] *Id*.

[30] https://www.alamy.com/a-billboard-on-the-side-of-a-building-in-midtown-manhattan-on-tuesday-july-9-2019-informs-viewers-of-the-privacy-afforded-by-using-apple-devices-richard-b-levine-image260045682.html (last viewed March 2, 2023).

[31] Privacy on iPhone | Data Auction | Apple, https://www.youtube.com/watch?v=NOXK4EVFmJY (last viewed March 2, 2023).

[32] *Id*.

[33] *Id*.

[34] *Id*.

[35] Privacy | App Tracking Transparency | Apple, https://www.youtube.com/watch?v=Ihw_Al4RNno (last viewed March 2, 2023).

"Your information is for sale. You have become the product."[36] After introducing Apple's privacy options, the narrator says, "Whatever you choose is up to you... App Tracking Transparency. A simple new feature that puts your data back in your control."[37]

37.     In 2022, Cook tweeted a message reiterating Apple's alleged commitment to users' privacy: "Privacy is a fundamental right and we build it into all products and services at Apple. You should be in control of your data--- not the highest bidder."[38] With the tweet, Cook shared a link to the data auction video, showing a hypothetical auction in which an iPhone user's private data is being auctioned off to the highest bidder.[39]

**C.     Apple Secretly Tracks Consumers' Data For Its Own Financial Gain.**

38.     In direct contravention of Apple's extensive branding its products and services as designed to respect and protect users' privacy, Apple ignores users' expressed preferences to keep their data private and tracks a wide range of consumers' activity for its own profit, including app activity.

39.     Apple collects demographic information about its users so it can direct specific advertising to them. This practice enables Apple to target advertising to users with specific demographic data, browsing behaviors, and interests, which will generate more revenue from advertisers.

40.     Apple explicitly promises in its Mobile Devices' settings that it will "disable the sharing of Device Analytics altogether" if consumers toggle or turn off "Share iPhone Analytics" on an iPhone, or similar settings on other Apple Mobile Devices, like the iPad.[40] Yet, it appears that Apple does not practice what it preaches.

---

[36] *Id.*

[37] *Id.*

[38] https://www.businesstoday.in/technology/news/story/you-should-be-in-control-of-your-data-says-apple-ceo-tim-cook-on-privacy-334194-2022-05-19 (last viewed March 5, 2023).

[39] *Id.*

[40] Thomas Germain, *Apple Is Tracking You Even When Its Own Privacy Settings Say It's Not, New Research Says*, GIZMODO (Nov. 8, 2022), https://gizmodo.com/apple-iphone-analytics-tracking-even-when-off-app-store-1849757558.

41.     Two independent app developers at the software company Mysk found that even if users affirmatively turn off "Allow Apps to Request to Track" and/or "Share [Device] Analytics" in their iPhone "privacy settings," as Apple advises, Apple still records, tracks, collects, and monetizes detailed information, including consumers' analytics data, browsing history and activity information from the App Store.[41] These experts and their testing further showed that Defendant continues to access consumers' app usage, app browsing communications, and personal information in its own apps, such as the App Store, Apple Music, Apple TV, Books, and Stocks, even when consumers have affirmatively toggled on their privacy controls.[42]

42.     The Mysk test demonstrated that Defendant's App Store "harvest[ed] information about every single thing you did in real time, including what you tapped on, which apps you search for, what ads you saw, and how long you looked at a given app and how you found it. The app sent details about you and your device as well, including ID numbers, what kind of phone you're using, your screen resolution, your keyboard languages, how you're connected to the internet – notably, the kind of information commonly used for device fingerprinting."[43]

43.     The Mysk researchers also found that Apple uses analytics data sent from its apps, such as Apple Music, Apple TV, Books, the iTunes Store, and Stocks to track users' activity across its various services.[44] Switching off device features such as device analytics had no impact on the information the apps were sending.[45]

44.     For instance, Apple's Stocks app shares users private information relating to their investment activities or preferences, the stocks they view or search for, and news articles that they

---

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

CLASS ACTION COMPLAINT

view in the app.[46] Apple even collects time-stamps on when users view certain stocks and engage with the Stocks app.[47]

45.     Defendant's collection of data from users' Mobile Devices despite its promise not to is not only an intrusion of privacy, but it also reveals users' private searches in the App Store that they may not want transmitted to public servers.[48] For example, users searching for apps relating to mental health, religion, sexual orientation, and other sensitive personal issues have a reasonable expectation that their personal browsing preferences will be kept private.[49]

46.     Most concerning, the Mysk study discovered that "Apple sends what's known as a 'Directory Service Identifier' along with its App Store analytics info and argues that the identifier is also tied to your iCloud account, linking your name, email address, and more."[50] Even if users turn off the analytics in their device setting, Apple also sends users' "Directory Services Identifiers" in other apps.[51]

---

[46] Germain, *supra* n.40, https://gizmodo.com/apple-iphone-analytics-tracking-even-when-off-app-store-1849757558.

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] Mitchell Clark, *iOS developers say Apple's App Store analytics aren't anonymous*, The Verge (Nov. 21, 2022), https://www.theverge.com/2022/11/21/23471827/apple-app-store-data-collection-analytics-personal-info-privacy.

[51] *Id.*

CLASS ACTION COMPLAINT

47.    *Gizmodo* revealed this issue in a November 8, 2022 article online.[52] Shortly thereafter, multiple other news outlets, including The Verge,[53] Engadget,[54] and Fox News,[55] reported on the results of the Mysk test and Apple's tracking practices.

48.    In January 2023, French data protection authorities acknowledged Apple's unlawful activities and fined Apple $8.5 million dollars for "illegally harvesting iPhone owners' data for targeted ads without proper consent."[56] A French court also find Apple over $1 million in December 2022, over similar practices related to Defendant's App Store.[57]

49.    Apple cannot justify collecting private user data when users expressly direct Apple not to do so by turning off "Allow Apps to Request to Track" and/or "Share [Device] Analytics."

50.    Apple has not disclosed to users that it was continuing to track and collect their private App usage data, even though users followed Apple's instructions to turn off app tracking in order to stop data collection.

51.    Because of Apple's deception and knowing concealment, any applicable statute of limitations has been tolled until only recently, when Plaintiff discovered his data was being tracked.

---

[52] Germain, *supra* n.40, https://gizmodo.com/apple-iphone-analytics-tracking-even-when-off-app-store-1849757558.

[53] Clark, *supra* n.50, https://www.theverge.com/2022/11/21/23471827/apple-app-store-data-collection-analytics-personal-info-privacy.

[54] Jon Fingas, *Researchers say iPhone usage data isn't as anonymous as Apple claims,* ENGADGET Nov. 21, 2022), https://www.engadget.com/apple-phone-usage-data-not-anonymous-researchers-185334975.html.

[55] Julia Musto, *Apple iPhone data not as anonymous as company says: researchers*, FOX NEWS (Nov. 22, 2022), https://www.foxnews.com/tech/apple-iphone-data-not-as-anonymous-company-says-researchers.

[56] Thomas Germain, *Apple Fined $8.5 Million for Illegally Collecting iPhone Owners' Data for Ads,* Gizmodo (Jan. 4, 2023), https://gizmodo.com/apple-iphone-france-ads-fine-illegal-data-1849950163.

[57] *Id.*

1

## V.    CLASS ACTION ALLEGATIONS

2      52.    Plaintiff brings this action on behalf of himself and the members of the following

3  class (the "Class"):

4            All individuals who purchased an Apple Mobile Device and had
             their personal information tracked by Apple after they turned off
5            or declined the setting(s) permitting Apple to track their
             information.
6

7      53.    Excluded from the proposed Class are: (i) Defendant, any entity in which Defendant

8  has a controlling interest, and Defendant's parents, subsidiaries, affiliates, officers, and directors;

9  (ii) the Judge to whom this case is assigned and any member of the Judge's staff or immediate

10 family; and (iii) Class Counsel.

11     54.    Plaintiff reserves the right to amend the Class definitions as necessary.

12     55.    As used herein, "Class Members" shall mean and refer to the members of the

13 proposed Class, including Plaintiff.

14     56.    The claims of all Class Members derive directly from a single course of conduct by

15 Apple. Apple has engaged and continues to engage in uniform and standardized conduct toward

16 the putative Class Members.

17     57.    Certification of Plaintiff's claims is appropriate because the elements of each of

18 Plaintiff's claims can be proven (or disproven) on a class-wide basis using the common evidence.

19     58.    Accordingly, Plaintiff brings this lawsuit as a class action on Plaintiff's own behalf

20 and on behalf of all other businesses, entities, and individuals similarly situated pursuant to Fed. R.

21 Civ. P. 23. This action satisfies the numerosity, typicality, adequacy, commonality, predominance,

22 and superiority requirements of Rule 23.

23     59.    Numerosity. The members of the proposed Class are so numerous that their

24 individual joinder would be impracticable. While the exact number of Class Members is not known

25 at this time, Plaintiff believes that the Class includes many hundreds of thousands of Class

26 Members, if not more. The precise number of Class Members, and their addresses, are unknown to

27 Plaintiff at this time but can be ascertained from Defendant's records and other appropriate

28 discovery.

60.     <u>Typicality</u>. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and members of the Class were harmed by the same wrongful and willful conduct of Defendant and are based on the same legal theories, resulting in the same injury to Plaintiff and Class Members. Plaintiff and all Class Members are similarly affected by Defendant's wrongful conduct, were damaged in the same way, and seek the same relief. Plaintiff's interests coincide with, and are not antagonistic to, those of the other Class Members. Plaintiff has been damaged by the same wrongdoing set forth in this Complaint.

61.     <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately protect and represent the interest of the members of the Class. Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the Class Members. Plaintiff has retained counsel competent and experienced in complex class action, business competition, and consumer privacy litigation, and Plaintiff and his counsel will fairly and adequately protect the interests of Class Members.

62.     <u>Commonality and Predominance</u>. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members because Defendant has acted on grounds generally applicable to the Class. The common legal and factual questions include, without limitation:

(a)     whether Defendant collects or tracks mobile user information and data without Class Members' consent;

(b)     whether Defendant intentionally intercepts Plaintiff and Class Members' communications within the meaning of the California Invasion of Privacy Act and the Federal Wiretap Act

(c)     whether Defendant engages in false or misleading advertising;

(d)     whether Defendant's conduct violates privacy and consumer protection laws alleged herein;

(e)     whether Plaintiff and Class Members were damaged by Defendant's conduct;

CLASS ACTION COMPLAINT

(f)     whether Plaintiff and Class Members are entitled to actual, compensatory, nominal, statutory, enhanced, and/or punitive damages, and if so in what amount; and

(g)     whether Plaintiff and the Class are entitled to injunctive, declaratory relief, or other equitable relief.

63.     Superiority. A class action is superior to other available means for the fair and efficient adjudication of the controversy. There is no special interest in Class Members individually controlling the prosecution of separate actions. The damages suffered by individual Class Members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for Class Members individually to redress effectively the wrongs done to them. Even if Class Members themselves could afford such individual litigation; the court system could not, given the thousands or even millions of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

64.     Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief. In the alternative, this action may properly be maintained as a class action under Fed. R. Civ. P. 23(b)(1) and (2), because:

(a)     the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant;

(b)     the prosecution of separate actions by individual Class Members would create a risk of adjudication with respect to individual Class Members which would, as a practical matter, be dispositive of the interests of other Class

1   Members not parties to the adjudication, or substantially impair or impede

2   their ability to protect their interests; or

3   (c)   Defendant has acted or refused to act on grounds generally applicable to the

4   Class, thereby making appropriate final injunctive or corresponding

5   declaratory relief with respect to the Class as a whole.

6   **A.   California Law Applies To The Entire Class**

7   65.   California substantive law applies to each member of the Class. The Apple Media

8   Services Terms and Conditions ("Terms and Conditions") governs use of Apple services, including

9   the App Store. The Terms and Conditions states "this Agreement and the relationship between you

10   and Apple shall be governed by the laws of the State of California, excluding its conflicts of law

11   provisions."[58]

12   66.   By choosing California law for the resolution of disputes related to this agreement,

13   Apple concedes that it is appropriate for this Court to apply California law to the instant dispute.

14   67.   Further, California's substantive laws may be constitutionally applied to the claims of

15   Plaintiff and the Class under the Due Process Clause, 14th Amend. § 1, and the Full Faith and Credit

16   Clause, Art. IV § 1 of the U.S. Constitution. California has significant contact, or significant

17   aggregation of contacts, to the claims asserted by Plaintiff and Class Members, thereby creating state

18   interests to ensure that the choice of California state law is not arbitrary or unfair.

19   68.   Apple's principal place of business is located at One Apple Park Way, Cupertino,

20   California, and Apple conducts substantial business in California, such that California has an

21   interested in regulating Apple's conduct under its laws. Apple's decision to reside in California and

22   avail itself of California's laws renders the application of California law to the claims herein

23   constitutionally permissible.

24

25

26

27   ---

[58] *See* Apple Media Services Terms and Conditions, last updated Sept. 12, 2022, *available at*
28   https://www.apple.com/legal/internet-services/itunes/.

VI.    **CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Invasion of Privacy – Intrusion Upon Seclusion**

**(On Behalf of Plaintiff and the Class)**

69.    Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

70.    California law recognizes the tort of invasion of privacy and intrusion upon seclusion.

71.    To assert a claim for intrusion upon seclusion under California law, a plaintiff must plead (1) that the Defendant intentionally intruded into a place, conversation, or matter as to which Plaintiffs had a reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable person.

72.    Defendant Apple's tracking of Plaintiff's and Class Members' app activity in order to harvest their personal data from their Mobile Devices, despite Plaintiff's and Class Members' explicit direction not to do so, constitutes an intention intrusion upon their seclusion.

73.    Plaintiff and Class Members have an objective, reasonable expectation of privacy in their personal information and the activity they engage in on their Mobile Devices.

74.    Plaintiff and Class Members did not consent to, authorize, or know about Defendant's intrusion into their mobile devices and apps at the time it occurred. Plaintiff and Class Members never agreed that Defendant could collect and/or disclose their personal information.

75.    Plaintiff and Class Members had an objective interest in precluding the collection, dissemination and/or misuse of their information and communications and in conducting their personal activities without intrusion or interference, including the right to not have their personal information intercepted and utilized for business gain.

76.    Defendant intentionally intrudes on Plaintiff's and Class Members' private life, seclusion, or solitude, without consent.

77.    Defendant's conduct is highly objectionable to a reasonable person and constitutes an egregious breach of the social norms underlying the right to privacy.

78. Plaintiff and the Class were harmed by Defendant's wrongful conduct. Defendant's conduct has caused Plaintiff and the Class mental anguish and suffering arising from their loss of privacy and confidentiality of their electronic communications.

79. Defendant's conduct has needlessly harmed Plaintiff and the Class by capturing intimately personal facts and data in the form of their Mobile Device and app activity. This disclosure and loss of privacy and confidentiality has caused Plaintiff and the Class to experience mental anguish, emotional distress, worry, fear, and other harms.

80. Additionally, given the monetary value of individual personal information, Defendant deprived Plaintiff and Class Members of the economic value of their interactions with Defendant's mobile devices and apps, without providing proper consideration for Plaintiff's and Class Members' property.

81. Further, Defendant has improperly profited from its invasion of Plaintiff's and Class Members' privacy in its use of their data for its own economic value.

82. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

83. Defendant's conduct is ongoing, and it continues to unlawfully intercept the communications of Plaintiff and Class Members without their consent any time Plaintiff and Class Members interact with Defendant's apps on their Mobile Devices. Plaintiff and Class Members are entitled to declaratory and injunctive relief to prevent future interceptions of their communications.

<u>**SECOND CAUSE OF ACTION**</u>

<u>**Breach of Implied Contract**</u>

**(On Behalf of Plaintiff and the Class)**

84. Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

85. Defendant solicited Plaintiff and Class Members to purchase its mobile devices with visual commercials, print ads, and other marketing materials, and represented to all such Class

Members that, in purchasing Apple products declining to track and/or share their personal information, their privacy would be maintained and assured.

86.  Defendant sold its devices to Plaintiff and Class Members for which it received and accepted or retained a benefit in the form of monetary payment.

87.  Plaintiff and Class Members paid money to Defendant in exchange for mobile devices and services, along with Defendant's promise to protect their personal information from unauthorized disclosure.

88.  As part of that agreement, and by providing consumers with the ability to turn off the "Allow Apps to Request to Track," "Share iPhone Analytics," and similar settings, Defendant impliedly promised that it would not track consumers who chose not to be tracked.

89.  Without such implied contracts, Plaintiff and Class Members would not have purchased their devices from Defendant or would have paid less for them.

90.  Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant. However, Defendant did not.

91.  Defendant has acknowledged that an invasion of data privacy included the harvesting by others of private information. Another example defining invasion of data privacy that Defendant has acknowledged is not keeping consumers' personal information only on their Mobile Devices.

92.  Defendant breached its implied contracts with Plaintiff and Class Members by continuing to track consumers who specifically asked not to be tracked. These circumstances are such that it would be inequitable for Defendant to retain the benefits received.

93.  As a direct and proximate result of Defendant's breach of its implied contracts with Plaintiff and Class Members, Plaintiff and Class Members have suffered and will continue to suffer injury, including but not limited to the premium they paid for Apple Mobile Devices not to be tracked, nominal damages and other damages to be determined at trial.

**THIRD CAUSE OF ACTION**

**Unjust Enrichment**

**(On Behalf of Plaintiff and the Class)**

94.     Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein. This claim is pled in the alternative to the contract-based claim.

95.     Plaintiff and Class Members conferred a tangible and material economic benefit upon Defendant. Despite branding itself as a company that respects privacy and offers consumers the ability to prevent data tracking, Defendant nonetheless collects Plaintiff's and Class Members' private data when they explicitly select not to have their private data tracked. Defendant benefited by using Plaintiff's and the Class's wrongfully obtained data to improve its products and enhance its advertising revenue.

96.     Defendant unjustly retained those benefits at the expense of Plaintiff and Class members because Defendant's conduct damaged Plaintiff and the Class, without providing any commensurate compensation to Plaintiff and Class Members.

97.     The benefits Defendant derived from Plaintiff and the Class rightfully belong to Plaintiff and the Class. Defendant's retention of the benefit conferred upon it by Plaintiff and Class Members would be unjust and inequitable.

98.     Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds that Defendant received, and such other relief as the Court may deem just and proper.

**FOURTH CAUSE OF ACTION**

**Violation of the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.***

**(On Behalf of Plaintiff and the Class)**

99.     Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

100.     The Federal Wiretap Act, 18 U.S.C. §§ 2510 et seq., confers a civil cause of action on "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." 18 U.S.C. § 2520(a). The statute prohibits a party

to a wire, oral, or electronic communication from intercepting the communication for the purpose of a criminal or tortious act. 18 U.S.C. § 2511(2)(d).

101.   "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

102.   "Contents" is defined as "includ[ing] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

103.   "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6).

104.   "Electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce . . . ." 18 U.S.C. § 2510(12).

105.   Defendant Apple is a person for purposes of the Federal Wiretap Act because it is a corporation.

106.   Plaintiff's and Class Members' app activity on their Mobile Devices are "electronic communications" within the meaning of 18 U.S.C. § 2510(12).

107.   Defendant Apple intercepted information regarding the substance of Plaintiff's and Class Members' app activity during its transmission for the wrongful purpose of associating that data with users' preexisting user profiles, including their iCloud accounts, in order to improve Defendant's products and target advertising to Plaintiff and Class Members, which is an invasion of their privacy.

108.   Defendant's actions were at all times knowing, willful, and intentional because Apple is a sophisticated tech entity that designed its app tracking and device analytics capabilities.

109.   Pursuant to 18 U.S.C. § 2520, Plaintiff and Class Members have been damaged by the interception, disclosure, and/or use of their communications in violation of the Wiretap Act and are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be

1  determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiffs

2  and the Class and any profits made by Defendant as a result of the violation, or (b) statutory

3  damages of whichever is the greater of $100 per day per violation or $10,000; and (3) reasonable

4  attorneys' fees and other litigation costs reasonably incurred.

5  **FIFTH CAUSE OF ACTION**

6  **Violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code § 632**

7  **(On Behalf of Plaintiff and the Class)**

8  110.  Plaintiff incorporates by reference all allegations in this Complaint and restates them

9  as if fully set forth herein.

10  111.  The California Legislature enacted the California Invasion of Privacy Act, Cal.

11  Penal Code §§ 630, *et seq.* ("CIPA") finding that "advances in science and technology have led to

12  the development of new devices and techniques for the purpose of eavesdropping upon private

13  communications and that the invasion of privacy resulting from the continual and increasing use of

14  such devices and techniques has created a serious threat to the free exercise of personal liberties

15  and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630.  Thus, the intent

16  behind CIPA is "to protect the right of privacy of the people of this state." *Id.*

17  112.  Cal. Penal Code § 632 prohibits eavesdropping upon or recording of any

18  confidential communication, including those occurring among the parties in the presence of one

19  another or by means of a telephone, telegraph, or other device, through the use of an electronic

20  amplifying or recording device without the consent of all parties to the communication.

21  113.  By contemporaneously intercepting and accessing Plaintiffs' and Class members'

22  app activity without consent and authorization of all parties, Defendant Apple eavesdropped and/or

23  recorded confidential communications through an electronic amplifying or recording device in

24  violation of § 631(a) of the CIPA.

25  114.  At all relevant times, Apple's tracking and recording of Plaintiff's and Class

26  Members' communications while using an app with "Allow Apps to Request to Track" and/or

27  "Share [Device] Analytics" turned off was without authorization and consent from the Plaintiff and

28  Class Members.

115.    Apple's mobile applications constitute an "amplifying or recording device" under the CIPA.

116.    Plaintiff and the Class have suffered losses by reason of these violations, including violation of rights to privacy and loss of value in personally identifiable information.

117.    Pursuant to California Penal Code § 637.2, Plaintiff and the Class have been injured by the violations of California Penal Code § 632, and seek damages for the greater of $5,000 or three times the amount of actual damages, as well as injunctive relief.

### SIXTH CAUSE OF ACTION

### Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

### (On Behalf of Plaintiff and the Class)

118.    Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

119.    Defendant Apple is a "person" as that term is defined by, inter alia, Cal. Bus. & Prof. Code § 17201.

120.    Defendant violated the California Unfair Competition Law ("UCL"), §§ 17200, *et seq.*, by engaging in unlawful, unfair, and deceptive business acts and practices in relation to its unlawfully collecting and using data from its Mobile Devices users, even if they indicate they do not want to be tracked.

121.    Defendant's unlawful, unfair, and deceptive acts and practices include, without limitation:

    (a)    Illegally recording users' confidential activity on their Apple Mobile Devices;

    (b)    Unlawfully collecting, storing, sharing, or otherwise using data from its Mobile Device users while representing to users that the data collection software was inactivated on their devices;

    (c)    Not honoring the requests of its users to refrain from tracking users' data while using Apple Mobile Devices; and

1    (d)    Continuing to lead users to believe that Apple is not receiving the data or
2           tracking app usage, while Apple continues to do so without users'
3           knowledge or consent.

4    122.    Defendant's illegal collection of user data also led to substantial injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition as contemplated under the UCL. Because Plaintiff and Class Members did not and could not know of Apple's continued tracking of their data analytics and impermissible use of their personal data, they could not have reasonably avoided the harms caused by Defendant's practices.

9    123.    Defendant misrepresented that it would protect the privacy and data analytics of Plaintiff and Class Members who elected not to share that information with Apple yet failed to do so. Defendant further omitted, suppressed, and/or concealed the material fact that it would continue to track users' communications and data usage even after those users requested that Apple not track or record Plaintiff's and Class Members' communications or access their Mobile Devices.

14   124.    Defendant engaged in unlawful business practices by violating Cal. Penal Code § 632.

16   125.    Defendant's misrepresentations and omissions to Plaintiff and Class Members were material because they were likely to deceive reasonable individuals about Defendant's adherence to its own privacy policies and procedures for turning off the "Allow Apps to Request to Track" and/or "Share Analytics" features.

20   126.    Defendant intended to mislead Plaintiff and Class Members and induce them to rely on its misrepresentations and omissions.

22   127.    If Defendant had disclosed to Plaintiff and Class Members that it would continue to receive their data regardless of the election to turn this tracking feature off, Defendant would have been unable to continue in business with such blatant disregard for users' privacy and data security. However, Defendant instead received, maintained, and compiled Plaintiff's and Class Members' personal data without advising Class Members that Apple would continue to invade their privacy and track data usage without their knowledge. Accordingly, Plaintiff and Class Members acted reasonably in relying on Defendant's misrepresentations about de-activating the data tracking

features on their Mobile Devices and omissions that Apple would continue to receive this data despite users' requests to the contrary.

128. As a direct and proximate result of Defendant's violations of the UCL, Plaintiff and Class Members sustained actual losses and damages as described herein.

129. Plaintiff and the Class seek restitution or disgorgement, injunctive relief, and further relief as the Court may deem just and proper.

130. Plaintiff brings this cause of action on behalf of all Class Members pursuant to UCL §17203, which authorizes extraterritorial application of the UCL. In the alternative, Plaintiff brings this cause of action on behalf of the California Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief and judgment against Defendant, as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff as representative of the Class and Plaintiff's counsel as Class Counsel;

(b) For an order declaring that Defendant's conduct violates the laws referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) For compensatory damages and actual damages, trebled, in an amount exceeding $5,000,000, to be determined by proof;

(e) For other appropriate relief, including actual, nominal and statutory damages;

(f) For an order granting Plaintiff and the Class punitive damages;

(g) For an order awarding Plaintiff and the Class civil penalties;

(h) For an order granting Plaintiff and the Class declaratory and equitable relief, including restitution and disgorgement;

1     (i)     For an order enjoining Defendant from continuing to engage in the wrongful

2          acts and practices alleged herein;

3     (j)     For an order awarding Plaintiff and the Class the costs of prosecuting this

4          action, including expert witness fees;

5     (k)     For an order awarding Plaintiff and the Class reasonable attorneys' fees and

6          costs as allowable by law;

7     (l)     For an order awarding pre-judgment and post-judgment interest; and

8     (m)     For an order granting any other relief as this Court may deem just and proper.

9
## JURY TRIAL DEMANDED

10     Plaintiff hereby demands a trial by jury on all issues so triable.

11   Dated: March 22, 2023         Respectfully submitted,

12          By: */s/ Kevin F. Ruf*

13          Kevin F. Ruf (#136901)
**GLANCY PRONGAY & MURRAY LLP**

14          1925 Century Park East, Suite 2100
Los Angeles, CA 90067

15          Telephone: (310) 201-9150
Facsimile: (310) 201-9160

16          Email: kruf@glancylaw.com

17

18          Brian P. Murray (*pro hac vice* forthcoming)
Lee Albert (*pro hac vice* forthcoming)

19          **GLANCY PRONGAY & MURRAY LLP**
230 Park Avenue, Suite 358

20          New York, NY 10169
Telephone: (212) 682-5340

21          Fax: (212) 884-0988
Email: bmurray@glancylaw.com

22          Email: lalbert@glancylaw.com

23          William G. Caldes (*pro hac vice* forthcoming)

24          Jeffrey L. Spector (*pro hac vice* forthcoming)
Diana J. Zinser (*pro hac vice* forthcoming)

25          **SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420

26          Philadelphia, PA 19103
Telephone: (215) 496-0300

27          Email: bcaldes@srkattorneys.com
Email: jspector@srkattorneys.com

28          Email: dzinser@srkattorneys.com

Garrett D. Blanchfield (*pro hac vice* forthcoming)
Brant D. Penney (*pro hac vice* forthcoming)
**REINHARDT WENDORF & BLANCHFIELD**
332 Minnesota Street, Suite W-1050
St. Paul, MN 55101
Tel: (651) 287-2100
Fax: (651) 287-2103
Email: g.blanchfield@rwblawfirm.com
Email: b.penney@rwblawfirm.com

David P. McLafferty (*pro hac vice* forthcoming)
**MCLAFFERTY LAW FIRM, P.C.**
923 Fayette Street
Conshohocken, PA 19428
Phone: (610) 940-4000 ext. 12
Email: dmclafferty@mclaffertylaw.com

*Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT